**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200332-U

Order filed January 19, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-20-0332 |
| v. | ) | Circuit No. 18-CF-726 |
| | ) | |
| SHEYANAH NICOLE LEE, | ) | The Honorable |
| | ) | John P. Vespa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Justices Davenport and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The defendant is entitled to a new trial because trial counsel rendered ineffective assistance by failing to object to the admission of footage from a police officer's body-camera into evidence.

¶ 2    The defendant, Sheyanah Nicole Lee, was convicted of first degree murder (720 ILCS 5/9-1(a)(2) (West 2018)) and was sentenced to 50 years of imprisonment. On appeal, Sheyanah argues that (1) trial counsel rendered ineffective assistance by failing to object to the admission

of a police officer's body-camera footage and (2) her 50-year prison sentence was excessive. We reverse and remand for a new trial.

¶ 3                                    I.  BACKGROUND

¶ 4     On December 11, 2018, Sheyanah Lee was charged by indictment with first degree murder for stabbing and killing Markesha Jeffries with a knife on November 27, 2018.

¶ 5     The circuit court held a jury trial over several days in February 2020. Evidence presented during the trial included that Sheyanah was in a relationship with Alicia George. Alicia had previously been in a relationship with Terry Parker, with whom she had four children. Because Alicia had been refusing to allow Terry to see their children since May or June of 2018, Terry had sought visitation through the court system.

¶ 6     On November 27, 2018, Alicia and Terry attended mediation at a law firm in Peoria, which resulted in an agreement that Terry would visit with his son the next day and with all the children during the coming weekend. The following facts concerning events occurring during and following the mediation derive from trial testimony.

¶ 7     The State called several witnesses at trial, including Nicole Jamison, the mother of Markesha Jeffries and Terry Parker. Nicole drove Terry to the mediation. While Nicole waited in the building's lobby during the mediation, Sheyanah entered with her minor sister and asked the receptionist where Alicia was and if she was okay. Upon learning that the mediation was not finished, Sheyanah and her sister started to leave. Sheyanah then allegedly turned to Nicole, pointed at her, and said, "I got you bitch when you leave out of here."

¶ 8     During the mediation, Markesha texted Nicole that she was in a vehicle in the parking lot. Nicole left the lobby briefly to talk to Markesha by the vehicle. During their conversation, she mentioned the comment that Sheyanah had made to her inside the lobby. Nicole did not see

Sheyanah or her sister in the parking lot, but Markesha indicated that she would go back inside with Nicole "just in case they pull back up."

¶ 9  After the mediation ended, Nicole walked out of the law firm with Terry, Alicia, and Markesha. At that time, a black vehicle drove up. Roger Pickett, who was Sheyanah's father, was driving. Roger, Sheyanah, and her sister all got out of the vehicle. Sheyanah exited from the front passenger side door, which was facing away from the group that included Nicole.

¶ 10  Nicole stated that Alicia "started hollering, 'Oh, you bitches ain't know nothing,' and *** made it like we were all into an altercation. And that's when they started running up towards us." Markesha reacted by telling Roger, Sheyanah, and her sister to back away and then spraying mace into the air in a half-circle motion. Nicole testified the mace hit Roger in the eyes but did not hit anyone else and was not sprayed a second time. Sheyanah then jumped at Markesha and the two started fighting.

¶ 11  Simultaneously, Alicia grabbed Nicole by the hair and started punching her in the head. Terry grabbed at Alicia and told her to let Nicole go. Alicia released her grip on Nicole's hair, and Nicole was able to see Sheyanah and Markesha pulling each other's hair. Alicia began hitting Markesha. Terry tried to get between the women and was able to push them apart. At that time, Nicole heard Markesha say that Sheyanah had stabbed her. Nicole observed blood pooling in Markesha's pants pocket. Nicole also saw Sheyanah start to run away from the group, but return when the police arrived on the scene.

¶ 12  The State then introduced a video of the melee in progress that had been taken by an attorney from the second floor of the building. Nicole identified each person in the video.

¶ 13  On cross-examination, Nicole stated that after the mace was sprayed and before the fight began, Markesha yelled, "[y]ou're going to jail for setting my cars on fire" and Alicia was also

3

yelling, but not at Markesha. Nicole also stated an order of protection existed that directed Alicia to stay away from Markesha. Nicole claimed that she did not ask Markesha to come to the law firm to get Alicia in trouble; rather, "[i]t was for Markesha to get justice for her cars being set on fire." She clarified that her goal was to get the police to make an arrest for the alleged arson. However, she had not called the police but had only texted with Markesha.

¶ 14        Nicole also testified an order of protection existed regarding Sheyanah as well, but that order had never been served.[1]

¶ 15        Terry's testimony largely corroborated Nicole's version of the incident. Terry added that after Markesha said she had been stabbed, he looked at Sheyanah and saw a knife in her hand with the blade protruding from between her index and middle fingers. He also saw a sheath lying on the ground.

¶ 16        Peoria police officer Brett Lawrence testified that he was dispatched to the scene. Originally, the dispatch was for a violation of an order of protection, but it changed while he was en route to a fight in progress. After he arrived and exited his vehicle, he was told by a bystander that Sheyanah had thrown a knife underneath a vehicle. He asked Sheyanah some questions while she was sitting in his vehicle in handcuffs. Sheyanah claimed that her eyes were burning, but Officer Lawrence stated that he did not see any redness or watering in her eyes.

¶ 17        Upon specific motion by the State, a two-minute portion of Officer Lawrence's body-camera footage was introduced into evidence without objection. The video segment showed Markesha on the ground, struggling to maintain consciousness. A large amount of blood could be seen on the ground around her. When the audio kicked in 30 seconds after the video started, the

_____

[1] We note that the presentence investigation report stated that Markesha had obtained an order of protection against Sheyanah on August 16, 2018, but that it was "dismissed" on September 26, 2018.

4

panicked pleas of Terry and Nicole could be heard. No one was applying pressure to, or otherwise addressing, Markesha's wound, including Officer Lawrence. After the video was played for the jury, the circuit court instructed the jury to leave the courtroom with the bailiff. Once the jury was gone, the court noted, "[t]hat was definitely a disturbing video." A short recess was taken.

¶ 18      Peoria police officer Paul Tuttle testified that a knife was found in the snow next to the parking lot. Multiple photographs, including photographs of the knife and the sheath, were introduced into evidence during Officer Tuttle's testimony.

¶ 19      The testimony of forensic pathologist Amanda Youmans was presented via stipulation. Youmans opined that Markesha's death was caused by a stab wound to the right groin, which injured the femoral artery and caused massive blood loss, which then led to cardiac arrest and death. The stab wound was approximately 1¼ inches deep and was consistent with the dimensions of the knife found at the scene.

¶ 20      The defense called two witnesses—Roger and Sheyanah. Roger testified when he and his daughters arrived, he heard Alicia and Markesha arguing. Roger told Sheyanah to stay in the vehicle; he exited with the intent of getting Alicia to leave and come with him, as he was her ride. Alicia was clearly agitated. Terry was also trying to defuse the situation.

¶ 21      Roger stated that Sheyanah and his younger daughter exited the vehicle and Markesha responded by spraying mace. He stated that the mace did not hit him. Next, Markesha hit Sheyanah, which led to them pulling each other's hair. He tried to separate Markesha and Sheyanah, but he stated that was when he got mace in his eyes: "Kesha get to spraying mace, or whatever it is, but see, she didn't spray it directly. It was like a sprinkle coming down like this.

And it get in my eyes a little bit." Roger then walked over to his car to get some ice to clear his eyes.

¶ 22    On cross-examination, Roger denied telling the police at the scene that he got sprayed with mace and did not see anything. He clarified that the only people who tried talking to him about the incident at the scene were detectives when he was inside the building lobby after the incident. He stated that the police officers never asked him what happened, and that the detectives were trying to get him to "go downtown" with them. He refused to go, however, telling the detectives that he had nothing to do with what happened.

¶ 23    Roger also stated on cross-examination that when he pulled up, the other individuals were leaving the building's lobby and he heard Alicia say that she did not want to fight and Markesha say that they were going to fight "because I know you did something to my car." Roger admitted that he did not relay this information to the police, but reemphasized that the police did not ask him what happened.

¶ 24    Sheyanah testified that she saw the situation escalating before she decided to exit her father's vehicle. She saw people encircling Alicia, so she exited the vehicle and said, "[w]hy is it every time Alicia George is by herself y'all want to do something to her?" Then, Markesha sprayed mace. Sheyanah stated the mace hit her. Next, Markesha grabbed her and started hitting her. Sheyanah fought back. While they were entangled and pulling each other's hair, Markesha sprayed mace once more and Sheyanah was hit by it.

¶ 25    Sheyanah also testified that she had neck surgery in 2016 after a car accident, during which her neck was stabilized with a plate and screws. She had fully recovered from the surgery by the time of the incident in 2018, although she stated on cross-examination that she still took Flexeril to help with occasional nerve pain in her neck.

¶ 26    Sheyanah testified that during the time she was fighting with Markesha, she feared mostly for her neck but also for her general safety should she have fallen to the ground. Because she was being hit and there were several people around her, she had to struggle to stay on her feet. She did not let go of Markesha's hair because she thought if she did, she would have fallen to the ground.

¶ 27    Sheyanah admitted that she stabbed Markesha in the leg. Her intention was to get Markesha off her. She panicked after she did it, which led to her trying to get rid of the knife. Sheyanah stated on cross-examination that she always carried the knife with her for protection.

¶ 28    Sheyanah further stated on cross-examination that the mace hit her in the eyes, causing them to burn, and it was only after the stabbing that she began to recover her sight. She also claimed that when Markesha initially grabbed her, Markesha said, "[y]eah, bitch I got you now. You can't see."

¶ 29    Sheyanah was interviewed by police at the station less than two hours after the incident. She claimed that she probably told the police twice that she feared for her safety during the fight. She did not mention her neck issue to the police. She also claimed that she cried during the entire interview and was remorseful for the stabbing even before she learned that Markesha had died. She admitted that she did not initially tell the police that she had stabbed Markesha. She also disavowed making any comments to the police about her sister trying to pull her away or trying to get the mace from Markesha.

¶ 30    On redirect examination, Sheyanah stated that a paramedic helped her clear her eyes at the scene.

¶ 31    In rebuttal, the State called two witnesses. First, Peoria police officer Brian Skaggs testified that he was dispatched to the scene of the incident, where he spoke to Roger inside the

building's lobby. His body-camera footage of the interview was admitted into evidence. Officer Skaggs stated, and the video confirmed, that Roger did not say to him that after Markesha sprayed the mace, everyone ducked and then she hit Sheyanah.

¶ 32        Second, Detective Scott Hulse testified that he conducted the interview of Sheyanah at the police station. Detective Hulse stated that during the interview, Sheyanah: (1) did not initially say that she stabbed Markesha, (2) told him that her sister was trying to pull her away during the fight, (3) told him that her sister said she was trying to get the mace away from Markesha during the fight, (4) did not tell him that she feared for her safety during the fight, (5) did not mention any neck issue, and (6) did not cry during the interview at all until after he told her that Markesha had died and she "had a very small emotional response." While a recording of Sheyanah's time in the interview room was made, it was not offered into evidence.

¶ 33        After deliberations, the jury returned a guilty verdict.

¶ 34        The presentence investigation report stated that Sheyanah had four behavioral incidents between June and December 2019 while she was held in the Peoria County Jail on this charge. There were two incidents of fighting with another inmate, as well as one incident of being disrespectful to staff and not following orders, and one incident of harassing an inmate.

¶ 35        Sheyanah had three nonviolent criminal convictions in her past: May 2009 and August 2009 convictions in California for possession of cocaine with the intent to sell, and October 2010 in Peoria for disorderly conduct. She also had three traffic convictions in 2012 for operating an uninsured vehicle, transportation of alcohol, and expired registration.

¶ 36       Sheyanah graduated from high school in California and attended college there briefly. At

the time of her arrest in 2018, she reported being employed by Coca-Cola in Bartonville.[2] She

also reported that she had been caring for a child for six years at the time she was arrested; she

was doing so because the biological mother had a severe drug addiction. After Sheyanah's arrest,

the minor was in his biological grandmother's care.

¶ 37       Sheyanah also reported that she had used cannabis, crack cocaine, and cocaine in the

past. She had never been in drug treatment. Regarding her physical health, she stated she had

screws and a plate in her neck from a past procedure and that she took Flexeril for her physical

problems.

¶ 38       Regarding the incident, Sheyanah expressed regret for her actions and stated that she

stabbed Markesha because "she felt scared during the incident and felt what she was doing was

in self-defense. She claims that she just wanted the victim to get off of her."

¶ 39       Several statements were also submitted prior to sentencing—victim impact statements

from Nicole, Markesha's husband, and Markesha's brother, Devonta.

¶ 40       Sheyanah wrote a letter to the circuit court prior to sentencing. Included in that letter was

the information that she had obtained a dental assistant degree from a college in California. She

also expressed regret for "the choice I made to protect myself." Seven character letters were also

sent to the circuit court on Sheyanah's behalf from her family members.

¶ 41       The circuit court held a sentencing hearing on July 17, 2020. In her statement to the

court, Sheyanah added:

_____

[2] In a letter to the circuit court, Sheyanah reported that she moved to Illinois in 2009.

9

"The way I protected myself has caused a life to be taken. In my 32 years of living, my biggest regret is using a knife to defend myself, instead of just trying to walk away. Lord knows that I wish I could rewind time—Lord knows that I wish I could rewind time and change the situation, but I can't. And for that I am deeply sorry.

I take full responsibility for causing the death of Markesha. What I've done, I done in thinking that was the best way to protect myself, but that is still no excuse for causing this everlasting pain for her family."

The court found no applicable statutory factors in mitigation, but that two factors in aggravation did apply—that Lee had a criminal history and that deterrence necessitated a lengthy sentence. The court noted that Sheyanah stated her regret was that she had used a knife to protect herself, which the court interpreted as her not taking responsibility for her conduct. The court also dismissed the defense's notion that Lee stabbed Jeffries out of fear based on her neck issues, noting that Lee knew about the neck issues when she decided to get out of the vehicle and approach Jeffries. The court also emphasized that Lee got out of the vehicle either because she intended to start a fight or participate if one started. The court further found that Lee's testimony was not credible, especially regarding her claims that she had been sprayed in the eyes with mace and that the stabbing was done merely to get Jeffries off her. The court then sentenced Lee to 50 years of imprisonment.

¶ 42     After her motion to reconsider sentence was denied, Lee appealed.

¶ 43                              II.  ANALYSIS

10

¶ 44 Sheyanah's first argument on appeal is that trial counsel rendered ineffective assistance by failing to object to the admission of Officer Lawrence's body-camera footage into evidence.

¶ 45 To establish that trial counsel rendered ineffective assistance, a defendant must satisfy both prongs of the test established by *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984), and adopted by our supreme court in *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). Under the first prong of the *Strickland* test, the defendant must show that trial counsel's performance fell below an objective standard of reasonableness. *People v. Perry*, 224 Ill. 2d 312, 341 (2007). "To establish deficient performance, the defendant must overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy." *Id.* at 341-42.

¶ 46 In this case, Sheyanah was charged under section 5-9(a)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/9-1(a)(2) (West 2018), which provided:

> "(a) A person who kills an individual without lawful justification
> commits first degree murder if, in performing the acts which cause
> the death:
>
> ***
>
> > (2) he or she knows that such acts create a strong
> > probability of death or great bodily harm to that
> > individual." *Id.*

¶ 47 Only relevant evidence is admissible. Ill. R. Evid. 402 (eff. Jan. 1, 2011). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). However, even relevant evidence can be excluded if its prejudicial effect outweighs its probative value. *People v. Gonzalez*, 142 Ill. 2d 481, 487-90

11

(1991); Ill. R. Evid. 403 (eff. Jan. 1, 2011). In particular, evidence "aimed directly at the sympathies, or outrage, of the jury" has been excluded for being more prejudicial than probative. *People v. Blue*, 189 Ill. 2d 99, 126 (2000) (holding that the admission of a police uniform spattered with the blood and brains of a police officer was inadmissible because its prejudicial impact outweighed its probative value).

¶ 48  Generally, the decision of whether to object to the admission of evidence is a matter of trial strategy that will not constitute ineffective assistance of counsel. See *Perry*, 224 Ill. 2d at 344. However, if no valid strategic reason exists for counsel's failure to object, such inaction can form the basis of a claim for ineffective assistance. See, *e.g.*, *People v. Sanchez*, 404 Ill. App. 3d 15, 18 (2010).

¶ 49  In this case, Officer Lawrence's body-camera footage showed only Markesha dying. She struggled to maintain consciousness as she continued to bleed and while her family members made emotionally charged pleas for help. Despite the State's disingenuous claims to the contrary on appeal, the footage did not add anything tending to prove that Sheyanah committed first degree murder under section 5-9(a)(2) of the Code. *Cf. People v. Beaman*, 229 Ill. 2d 56, 73 (2008) (holding that "[t]he prosecutor's interest in a criminal prosecution is not that it shall win a case, but that justice shall be done" (internal quotation marks omitted)). The State had introduced into evidence a cell phone video of the melee, as well as photographs of the scene, and neither the fact nor the cause of Markesha's death was in doubt. Under these circumstances, there was no conceivable strategic reason for trial counsel not to object to the admission of Officer Lawrence's body-camera footage. We hold that trial counsel's failure to object constituted deficient performance under *Strickland*'s first prong. See, *e.g.*, *People v. McMillin*, 352 Ill. App. 3d 336, 344 (2004).

¶ 50    Under the second prong of the *Strickland* test, the defendant must show that "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Perry*, 224 Ill. 2d at 342. "A reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *People v. Enis*, 194 Ill. 2d 361, 376 (2000).

¶ 51    In addressing whether Sheyanah was prejudiced by her counsel's deficient performance, it is again imperative to remember that she was charged with violating subsection (a)(2) of the first degree murder statute. 720 ILCS 5/9-1(a)(2) (West 2018). There was no dispute that Sheyanah caused Markesha's death by stabbing her in the leg; she admitted that she had. The key questions in this case were whether Sheyanah's conduct was legally justified and whether Sheyanah knew that by stabbing Markesha in the leg, she created a strong probability of death or great bodily harm. Thus, the reasons why Sheyanah and Markesha were in the parking lot and who started the fight were largely inconsequential to the State's case. It was far more significant that Sheyanah and Markesha were engaged in mutual combat at the time of the stabbing and that Sheyanah stabbed Markesha *in the leg*. It was for the jury to decide whether Sheyanah acted in self-defense, whether she knew that stabbing Markesha in the leg created a strong probability of death or great bodily harm, and whether self-defense justified Sheyanah's action.

¶ 52    In that context, the State introduced into evidence a video that showed, again, only Markesha in the actual process of dying and her family members' emotionally charged and futile pleas for help. Even the circuit court felt the need to comment on its disturbing nature. Because Officer Lawrence's body-camera footage was in fact so shocking and it had *no* probative value, it is reasonably probable that its admission into evidence was sufficient, standing alone, to tip the

13

scales in favor of the State's prosecution of the perpetrator. Under these circumstances, we hold that Sheyanah was unfairly prejudiced by trial counsel's deficient performance. Because Sheyanah has satisfied both prongs of the *Strickland* test, we hold that trial counsel rendered ineffective assistance and her conviction must be reversed. We also hold that the appropriate remedy is to grant Sheyanah a new trial. *People v. Young*, 306 Ill. App. 3d 350, 356 (1999).

¶ 53 Lastly, we note that Sheyanah has not challenged the sufficiency of the evidence to find her guilty. We hold that double jeopardy does not bar a retrial, as the evidence presented by the State was sufficient, if believed by an unbiased trier of fact, to find Sheyanah guilty. *People v. Wilson*, 392 Ill. App. 3d 189, 202 (2009).

¶ 54 Our reversal of Sheyanah's conviction obviates the need to address her sentencing issue. However, in light of what we perceive as the court's biased characterization of Sheyanah's statement in allocution during the sentencing hearing as showing no remorse, we believe that the trial on remand should take place before a different judge. See *People v. Jones*, 2016 IL App (1st) 141008, ¶¶ 37-38.

¶ 55 III.  CONCLUSION

¶ 56 The judgment of the circuit court of Peoria County is reversed and the cause is remanded for further proceedings.

¶ 57 Reversed and remanded.